IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CARMEN COX,** | |
| **Plaintiff,** | |
| v. | Case No. 24-cv-1375-SPM |
| **ROB JEFFREYS, JOHN DOE #'s 1-6, ANTHONY WILLS,** | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Plaintiff Carmen Cox, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Cox alleges that excessive force was used against him in violation of the Eighth Amendment and state law.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

In his Complaint, Cox makes the following allegations: On October 18, 2021, Cox was out on the yard at Menard Correctional Center along with other inmates from the East Cellhouse (Doc. 1, p. 4). While walking around the yard, he heard a warning gunshot and a correctional officer in Tower 11 yelled for the inmates to get down (*Id*. at pp. 4-5). Cox and the inmates around him complied with the officer's order and got down on the ground. Cox noticed that the shots came from Tower 5 due to a fight between inmates that occurred several yards from Cox's location (*Id*. at p. 5).

Cox remained on the ground while Menard's emergency response team (otherwise known as the tactical team) entered the yard (Doc. 1, p. 5). Cox notes that the tactical team is usually utilized in situations where force might me needed, including during riots or cell extractions (*Id*.). The members often wear all black, a vest, and helmet with face shield, making it difficult to identify the individual members (*Id*.). They also carry batons, pepper mace, flashlight, and radio (*Id*.). Cox also notes that the tactical team has a different command structure than other officers (*Id*. at pp. 5-6). Individual members answer to the facility tactical commander or assistant commanders, who in turn answer to regional and statewide commanders (*Id*. at p. 6). Those commanders answer to IDOC's deputy chief of operations, chief of operations, and IDOC director (*Id*.).

John Doe #6, a tactical team member at Menard, entered the yard near Cox and immediately began firing pepper balls at all of the inmates on the yard (*Id*. at p. 6). Cox was hit several times, at least once on his right knee and groin area (*Id*.). His knee swelled to the size of a softball (*Id*.). He was unable to stand or walk. John Doe #6 and another

member of the tactical team dragged Cox off of the yard to the healthcare unit. Cox complained to John Doe #6, inquiring as to why he shot Cox when he was not involved with the fight (*Id.*). In response, John Doe #6 threatened Cox, telling him to quit complaining or he would give Cox something to whine about (*Id.*).

On the way to the healthcare unit, Cox saw Warden Wills and John Doe #5 Assistant Warden (Doc. 1, p. 7). He informed them that John Doe #6 shot him despite not being involved in the fight on the yard (*Id.*). Both Wills and John Doe #5 ignored his complaints.

At the healthcare unit, Cox was examined by John Doe #7 Doctor (*Id.* at p. 7). John Doe #7 informed Cox that there was nothing wrong with his knee (*Id.*). Cox complained that his knee was the size of a softball, but the doctor construed Cox's grimaces of pain as a threatening posture and ordered John Doe #6 to escort Cox out of the healthcare unit (*Id.*). Cox received no care for his injuries (*Id.*). Cox alleges that as a result of the injuries he sustained from the pepper ball shots and John Doe #6 dragging him off the yard, Cox suffered bruises to his knee and groin, pain, and difficulty urinating (*Id.* at p. 8).

Cox also alleges that John Doe #6's use of force was the direct result of actions by Rob Jeffreys, Anthony Wills, John Doe #1 Chief of Operations, John Doe #2 Deputy Chief of Operations, John Doe #3 Tactical Team Commander, John Doe #4 Assistant Tactical Team Commander, and John Doe #5 Assistant Warden. He alleges that Jeffreys, John Doe #1, and John Doe #2 created policies, and John Doe #'s 3-5 and Warden Wills implemented those policies at Menard. Specifically, Cox alleges that there was a widespread practice of failing to screen, train, test, supervise, and discipline tactical team

3

members (*Id*. at pp. 9-10). He also alleges that there was a culture of silence that prevented other members from reporting incidents of excessive force (*Id*.). Further, he alleges that all of the defendants failed to take any precautionary measures to limit the effects of noxious chemicals on innocent inmates (*Id*. at p. 9). Cox further alleges that the defendant officials were aware of issues with the tactical team's actions but allowed members to continue to violate inmates' rights (*Id*. at p. 10).

### Preliminary Dismissals

Although Cox attempts to allege a claim against a medical provider he identifies as John Doe #7 for failing to properly treat his injuries after the pepper ball incident, Cox fails to identify the provider as a defendant in the case caption (Doc. 1, pp. 1, 4). *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"). Thus, any potential claim against John Doe #7 is **DISMISSED without prejudice**.

Cox also attempts to sue a number of officials at various levels of IDOC for their failure to train, discipline, screen, investigate, and supervise the tactical team members and their use of force. He alleges that the warden, assistant warden, tactical commanders, various regional and state level commanders and deputies, and the IDOC director are liable for their failure to supervise and oversee the tactical team under their employ. But these high-ranking officials cannot be liable simply in their positions as supervisors because the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008); *Burks v. Raemisch*, 555 F.3d 592, 593-4 (7th Cir. 2009). Officials cannot be liable for failure to train

or other policy claims because such claims "are usually maintained against municipalities, not against individuals." *Sanville v. McCaughtry*, 266 F.3d 724, 739 (7th Cir. 2001) (citing *Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000)).

Instead, an official can only be liable if they were personally involved in the unconstitutional conduct. An official can be liable "where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (quotations omitted). But Cox fails to allege that any of these officials were aware that John Doe #6 specifically posed a threat to Cox or anyone else. There are simply no allegations to suggest that they were personally involved in the use of force, were aware of any threat posed by John Doe #6, or turned a blind eye to his actions. Cox does allege that he told Warden Wills and John Doe #5 about John Doe #6's actions but he only told them after the fact. There is no indication that they were aware of or present during John Doe #6's use of force. Thus, any potential claims against Jeffreys, Wills, or John Doe #'s 1-5 are **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

**Count 1:** Eighth Amendment excessive force claim against John Doe #6 for shooting pepper balls at Cox and then dragging him off of the yard.

**Count 2:** Illinois state law assault and battery claim against John Doe #6.

5

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Cox states a viable claim for excessive force against John Doe #6 in Count 1. He also adequately alleges that John Doe #6's actions amounted to an assault and battery under Illinois state law. Where a district court has original jurisdiction over a civil action, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a). Cox's state law claims derive from the same factual allegations as his federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008) (a loose factual connection between the federal and state claims is generally sufficient). Thus, the Court will exercise supplemental jurisdiction over the state law claim in Count 2.

## Disposition

For the reasons stated above, Counts 1 and 2 shall proceed against John Doe #6. In order to help identify the unknown officer, the Court **ADDS** Anthony Wills, in his official capacity only, to respond to discovery aimed at identifying John Doe #6.

The Clerk of Court shall prepare for Defendant Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

(2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment as identified by Cox. If defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Cox, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**. **Because Anthony Wills is only in the case to respond to discovery aimed at identifying John Doe #6, he need not file an Answer. Once counsel for Anthony Wills has entered his appearance, the Court will enter a scheduling order setting for the deadlines for John Doe discovery.**

If judgment is rendered against Cox, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless

7

of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Cox is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 19, 2024.**

*/s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**